# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHARLES WILLIAM CARTER,                     Case No. 1:11-cv-800
     Petitioner,


                                         Spiegel, J.
    vs.                                    Bowman, M.J.


WARDEN, CHILLICOTHE                         **REPORT AND**
CORRECTIONAL INSTITUTION,                   **RECOMMENDATION**
     Respondent.


Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on respondent's "Motion To Dismiss Or, In The Alternative, To Transfer" the petition to the Sixth Circuit because it is a successive petition governed by authorization requirements set forth in 28 U.S.C. § 2244(b). (Doc. 4). Petitioner opposes respondent's motion. (Doc. 5).

## I. PROCEDURAL BACKGROUND

### State Criminal Trial And Appeal Proceedings

In June 2001, the Clinton County, Ohio, grand jury returned an indictment charging petitioner with one count of aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(1); one count of rape in violation of Ohio Rev. Code § 2907.02(A)(2); one count of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(4); and one count of possession of criminal tools in violation of Ohio Rev. Code § 2923.24. (*See* Doc. 4, Ex. 1). In its direct appeal decision, the Ohio Court of Appeals, Twelfth Appellate District, provided the following

summary of the facts that led to petitioner's indictment:[1]

Appellant and K.S. were co-workers at Lowe's in Wilmington. Appellant wanted a romantic relationship with K.S. However, K.S. declined appellant's advances.

On June 12, 2001, appellant broke into K.S.'s apartment while she was sleeping in her bed. K.S. was awakened to find a masked person standing next to her. K.S. began to scream so appellant put a pillow over her face to muffle the sound. Appellant then handcuffed K.S.'s hands to the headboard of the bed. Appellant then placed a latex glove into K.S.'s mouth to keep her from screaming. K.S. began choking on the glove but was eventually able to remove it from her mouth. Appellant then stuffed a sock into her mouth and placed duct tape over K.S.'s mouth and eyes. Once K.S. could not see, scream, or move her arms, appellant proceeded to undress and rape her.

During the rape, K.S. was able to free the duct tape from her mouth. She then asked appellant to unlock the handcuffs. Appellant removed the handcuffs from K.S.'s hands. Once K.S. was released she ran from the apartment. K.S. then noticed the masked man leaving her apartment. She ran after her assailant and was able to remove the mask. Once the mask was removed, K.S. recognized her assailant as appellant, her co-worker.

K.S. called 9-1-1 to report the rape. K.S. gave the operator a description of appellant, his car, and informed the operator where appellant lived. Dispatch transmitted a "be on the lookout" ("BOLO") for a possible rape suspect giving appellant's description and license plate number.

Ohio State Highway Patrol Trooper Gary Heaton spotted appellant's vehicle in Highland County with only one operable headlight. Trooper Heaton stopped appellant for the headlight violation. Trooper Heaton then verified that the license plate matched that of the BOLO. Appellant was detained for questioning. Trooper Heaton performed a pat-down search of appellant for safety purposes and the search revealed a pocketknife.

Detective Duane Weyand of the Wilmington Police Department arrived to transport appellant to Clinton County for questioning in connection with the reported rape. Det. Weyand performed a pat-down search of appellant before

---

[1]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

placing him in the cruiser. Det. Weyand removed handcuffs and latex gloves from appellant's pockets. Det. Weyand read appellant his *Miranda* rights in the vehicle on the way to the Wilmington Police Department. During the drive, appellant signed a *Miranda* waiver form and was interviewed. According to appellant, during the interview he asked the officers what he could be charged with and the officers replied "some form of sex without consent."

(*Id.*, Ex. 10, "Opinion," pp. 1-3).

On January 17, 2002, petitioner entered a no contest plea to all charges, which the court accepted after a hearing in which it was determined that petitioner had entered the plea knowingly, intelligently and voluntarily. (*See id.*, Exs. 4-5). On February 20, 2002, the court issued a Judgment Entry sentencing petitioner to the following consecutive terms of imprisonment totaling (20) years: ten (10) years, including a mandatory 5-year prison term, for the rape offense; five (5) years for the kidnapping offense; and five (5) years for the aggravated burglary offense.[2] (*Id.*, Ex. 6). On the same date, the court entered an additional Judgment Entry in which it was determined that petitioner is a sexual predator subject to state registration requirements for sex offenders. (*Id.*, Ex. 7).

With the assistance of counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, Twelfth Appellate District, raising the following assignments of error:

1. The trial court erred and violated appellant's Fourth Amendment rights when it refused to order appellant's statements suppressed, because the evidence showed that those statements were involuntary.

2. The trial court erred in failing to sustain the suppression motion because the State failed to meet its burden of proving that the officer who issued the dispatch had a reasonable basis on which to suspect appellant of an offense.

3. The trial court erred in finding that appellant was a sexual predator.

---

[2]An eleven-month concurrent prison sentence was imposed for the possession-of-criminal-tools offense. (*See* Doc. 4, Ex. 5, p. 4).

> 4.  The trial court violated the Double Jeopardy Clause of the Ohio and U.S.
> Constitutions when it sentenced appellant for rape and kidnapping, when the
> object of the offenses was the same and when the offenses were committed with
> the same animus.

(*See id.*, Ex. 8).  On November 12, 2002, the Ohio Court of Appeals overruled the assignments

of error and affirmed the trial court's judgment on November 12, 2002.  (*Id.*, Ex. 10).

Petitioner timely appealed to the Ohio Supreme Court, which issued an entry on March

19, 2003 declining jurisdiction to hear the case and dismissing the appeal "as not involving any

substantial constitutional question."  (*See id.*, Exs. 11, 13).  Petitioner also filed a timely motion

under Ohio R. App. P. 26(B) with the Ohio Court of Appeals, seeking to reopen the direct appeal

based on claims of ineffective assistance by his appellate counsel.  (*See id.*, Ex. 14).  The Ohio

Court of Appeals denied the reopening application and, in a final entry issued June 11, 2003,

denied petitioner's subsequent motions for reconsideration.  (*Id.*, Ex. 15 & Exs. 16-18).

Respondent states that petitioner did not appeal the denial of his reopening application to the

Ohio Supreme Court.  (Doc. 4, Brief, p. 5).

### First Federal Habeas Petition

In December 2003, petitioner filed a *pro se* habeas corpus petition pursuant to 28 U.S.C.

§ 2254 with this Court challenging his Clinton County conviction and sentence.  In that action,

filed as Case No. 1:03-cv-901 (S.D. Ohio) (Dlott, J.; Black, M.J.), petitioner asserted the

following grounds for relief, as summarized by the magistrate judge in a Report and

Recommendation filed on April 3, 2006:

> **Grounds One and Two:**  The trial court erred in violation of petitioner's rights
> under the Fourth and Fourteenth Amendments when it overruled petitioner's
> motion to suppress evidence obtained after his unlawful arrest without "a warrant,
> probable cause or a sworn complaint" outside the arresting officer's jurisdiction.

**Ground Three:**  The trial court erred in violation of petitioner's Fifth Amendment rights when it overruled petitioner's motion to suppress statements made by him to the police, which petitioner claims were "coerced" by the arresting officer.

**Ground Four:**  Petitioner was denied due process when the trial court imposed consecutive sentences "unsupported by findings required by statute" in Ohio.

**Ground Five:**  Petitioner was denied due process when, in violation of Ohio law, the trial court sentenced him to a mandatory five-year sentence for the rape offense and failed to "state why [he was] being sentenced to more than the shortest prison term for a first time offender."

**Ground Six:**  Petitioner was denied due process when the Ohio Court of Appeals denied his application for reopening of the appeal without addressing a claim of error that had been raised by him regarding his right to appellate review of his sentence.

**Ground Seven:**  Petitioner's rights under the Fifth Amendment's Double Jeopardy Clause were violated when petitioner was sentenced to consecutive terms of imprisonment on the "allied offense" charges of rape and kidnapping, which were not committed with a "separate animus."

**Ground Eight:**  Petitioner's equal protection rights were violated when a Clinton County police officer, "impersonating" a Highland County officer, arrested petitioner in Highland County, outside the officer's jurisdiction.

**Ground Nine:**  Petitioner's equal protection rights were violated when he was "false[ly] arrest[ed]" by a police officer who "did not have a warrant or jurisdiction" to arrest him.

**Ground Ten:**  Petitioner's equal protection rights were violated when he was unlawfully "abducted" from Highland County, the place of his arrest, to the Clinton County police department located 35 miles away in Wilmington, Ohio.

**Ground Eleven:** Petitioner's equal protection rights were violated when the arresting officer committed the "theft" offense of having petitioner's truck towed and impounded.

(*Id.*, Ex. 20, pp. 7-8; *see also* Ex. 19).

In the April 3, 2006 Report and Recommendation, the magistrate judge recommended

that the petition be denied with prejudice because (1) seven of petitioner's claims (Grounds Four

through Six and Eight through Eleven) were procedurally defaulted and waived because they were not asserted as claims of error in the state direct appeal proceedings; (2) petitioner's claim of a Fourth Amendment violation (alleged in Grounds One and Two) was barred from review under standards enunciated by the Supreme Court in *Stone v. Powell*, 428 U.S. 465 (1976); and (3) petitioner had not demonstrated he was entitled to federal habeas relief based on the merits of his remaining two claims (Grounds Three and Seven). (*See id.*, Ex. 20). On June 7, 2006, the District Court adopted the magistrate judge's Report and Recommendation and denied the habeas corpus petition with prejudice. (*Id.* Ex. 21).

Petitioner appealed to the United States Court of Appeals for the Sixth Circuit, requesting the issuance of a certificate of appealability. (*Id.*, Exs. 22-23). On March 16, 2007, the Sixth Circuit denied petitioner's application for a certificate of appealability. (*Id.*, Ex. 24). Thereafter, petitioner filed a petition for rehearing with the Sixth Circuit, which was denied on June 7, 2007. (*Id.*, Exs. 25-26). Petitioner next filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on January 14, 2008. (*Id.*, Ex. 27).

**Motions For Modification Of Sentence During Pendency Of First Habeas Action**

On March 17, 2006, while petitioner's initial federal habeas petition was pending in the District Court for ruling, petitioner filed a *pro se* motion with the state trial court for modification of his sentence; in the motion, petitioner contended that the consecutive sentences imposed by the trial court were unconstitutional under the Ohio Supreme Court's February 2006 decision in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), striking certain provisions from Ohio's sentencing statutes as violative of the Sixth Amendment in light of *Blakely v. Washington,* 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). (*Id.*, Ex. 28). The trial court

6

denied petitioner's motion for modification of sentence without opinion on March 21, 2006. (*Id.*, Ex. 29). Petitioner appealed to the Ohio Court of Appeals, Twelfth Appellate District, which affirmed the trial court's judgment on the grounds that (1) *Foster* is not retroactively applicable to petitioner's case; and (2) petitioner had neither filed his motion, construed as a petition for post-conviction relief, within the requisite time period set forth in Ohio Rev. Code § 2953.21(A)(2), nor satisfied the exception established in Ohio Rev. Code § 2953.23(A)(1) for excusing the filing requirement. (*Id.*, Exs. 34-35). The Ohio Court of Appeals denied petitioner's motion for reconsideration. (*See id.*, Exs. 36-37). Petitioner timely appealed to the Ohio Supreme Court, which issued an Entry on January 24, 2007, declining jurisdiction to hear the case and dismissing the appeal "as not involving any substantial constitutional question." (*See id.*, Exs. 38-39).

A couple of months thereafter, on March 21, 2007, petitioner filed a second motion for modification of sentence with the trial court. (*Id.*, Ex. 40). In that motion, petitioner again argued that his sentence was unconstitutional under the *Blakely*-line of Supreme Court cases, but this time he relied on the Supreme Court's January 2007 decision in *Cunningham v. California*, 549 U.S. 270 (2007), as support for the contention that his sentence could not be enhanced "beyond the shortest prison term." (*See id.*). The trial court denied the motion on March 26, 2007. (*Id.*, Ex. 41). Petitioner timely appealed to the Ohio Court of Appeals, Twelfth Appellate District, which affirmed the trial court's judgment on September 24, 2007, because the motion, construed as a petition for post-conviction relief, was not timely filed. (*Id.*, Ex. 46). Petitioner filed a motion for reconsideration, which was denied. (*See id.*, Exs. 47-48). Apparently, petitioner did not pursue a further appeal to the Ohio Supreme Court. (*See id.*, Brief, p. 9).

**Application For Leave To File Second Federal Habeas Petition**

Respondent states that in December 2007, petitioner filed an application with the United States Court of Appeals for the Sixth Circuit, requesting authorization to file a second or successive federal habeas corpus petition under 28 U.S.C. § 2254. (*Id.*). Petitioner sought permission to file the second petition in order "to raise a single issue: whether Ohio Rev. Code § 2929.14(E)(4), which requires consecutive sentences and mandates judicial fact-finding of facts not proven to a jury or admitted by the defendant, is unconstitutional." (*See id.*, Ex. 49, p. 1). On October 23, 2008, the Sixth Circuit denied petitioner's application, reasoning in pertinent part as follows:

> Carter's proposed argument, which is a challenge pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), is essentially a recharacterization of one of the arguments made in his original petition. We are obligated to deny his request on that basis. § 2244(b)(1). Were we to deem the argument new, we would nonetheless deny Carter's motion.

> Because Carter does not rely on a newly discovered factual predicate, § 2244(b)(2)(B), he must show that his argument "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, which was previously unavailable." § 2244(b)(2)(A). Carter asserts that a new rule of constitutional law was established in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), in which the Ohio Supreme Court held that section 2929.14 violates the spirit of *Blakely. Id.* at 491.

> Carter's reliance on *Foster* is misplaced. The case did not establish a new rule of constitutional law but merely implemented the rule established by the Supreme Court in *Blakely.* Nor was the decision made applicable to cases on collateral review. *See id.* at 499. More importantly § 2244 contemplates a new rule of constitutional law established and held retroactively applicable by the United States Supreme Court. . . . A decision by a state supreme court does not satisfy § 2244.

> Carter's reliance on *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856 (2007), is also misplaced. In that case, the Supreme Court invalidated a California sentencing statute on principles announced in *Blakely* and *United States v. Booker*, 543 U.S. 220 (2005). . . . *Cunningham* did not pronounce a new

8

rule of constitutional law.

> Finally, *Blakely* may not be applied retroactively on collateral review. *Valentine v. United States*, 488 F.3d 325, 330 (6th Cir. 2007). . . ; *Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir. 2005). Because Carter did not file a petition for certiorari, his conviction became final no later than June 19, 2003 – 90 days after the Ohio Supreme Court declined to assert jurisdiction over his appeal. *See Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) (addressing finality for purposes of retroactivity analysis); Sup. Ct. R. 13. *Blakely* was promulgated on June 25, 2004, and could not, under *Valentine* and *Humphress,* provide a legal basis for an initial § 2254 petition.

(*Id.*, pp. 2-3).

### Subsequent State Court Proceedings

A year later, in October 2009, petitioner filed a *pro se* motion for resentencing with the trial court, contending that the sentencing entry filed in 2002 failed to properly state that petitioner was subject to a mandatory five-year term of post-release control supervision. (*Id.*, Ex. 50). The trial court denied petitioner's motion for resentencing. (*Id.*, Ex. 51). However, on appeal, the Ohio Court of Appeals, Twelfth Appellate District, determined that although petitioner had been correctly notified at his sentencing hearing that he would be sentenced to a mandatory five-year post-release control term, the sentencing entry contained a "clerical error" requiring correction to the extent it stated that petitioner was subject to a post-release control term of "up to 5-years." (*See id.*, Ex. 58). The state appellate court remanded the matter to the trial court to "correct the clerical error in the original sentencing entry, nun[c] pro tunc, to conform to the sentence pronounced at the sentencing hearing, to wit: a mandatory postrelease control term of five years." (*Id.*). In accordance with the Ohio Court of Appeals' remand order filed on July 6, 2010, the trial court issued the "Nunc Pro Tunc" sentencing entry two days later, on July 8, 2010. (*See id.* & Ex. 59).

Soon thereafter, on July 23, 2010, petitioner filed a *pro se* motion to withdraw his no contest plea, claiming that the assistant prosecuting attorney had withheld exculpatory evidence. (*Id.*, Ex. 70). Specifically, petitioner claimed that the prosecutor failed to disclose the "Wilmington Police Radio Log" of June 12, 2001; petitioner contended that the log demonstrates that the Clinton County police detective who was sent to pick him up in Highland County lacked probable cause to search or arrest him because, contrary to the officer's testimony at the suppression hearings held in October and November of 2001, the log does not reflect that the officer was in contact with another police officer who provided information regarding the attacker's identity. (*See id.* & Ex. 75, pp. 8-15). On July 26, 2010, the trial court issued an entry denying petitioner's motion filed over eight years after the challenged no contest plea was entered. (*See id.*, Ex. 73).

Petitioner filed timely appeals to the Ohio Court of Appeals, Twelfth Appellate District, from the trial court's "Nunc Pro Tunc" sentencing entry and entry denying his motion to withdraw his no contest plea. (*See id.*, Exs. 72-73).[3] The appeals were consolidated. (*Id.*, Ex. 74). In his appellate brief, petitioner asserted the following assignments of error:

1. The trial court errored and exceeded it[]s authority when it imposed a five (5) year mandatory sentence that was not supported by statute.

2. The trial court errored when it imposed maximum and consecutive sentences.

3. The trial court errored when it imposed a sentence on an allied offen[s]e, and

---

[3]It is noted that petitioner also filed a motion to certify conflict with the Ohio Court of Appeals, Twelfth Appellate District, on July 14, 2010. (Doc. 4, Ex. 60). In the motion, petitioner claimed that the appellate court's July 6, 2010 decision remanding the matter for correction of a "clerical" sentencing error was "in conflict" with judgments of other Ohio appellate courts. (*Id.*). The court of appeals granted petitioner's motion to certify conflict. (*Id.*, Ex. 61). However, on January 19, 2011, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal. (*Id.*, Ex. 67). On March 16, 2011, the state supreme court also denied petitioner's motion for reconsideration. (*See id.*, Exs. 68-69).

then ran that sentence consecutive with the allied offense.

4. The trial court errored when the court denied appellant's motion to withdraw his no contest plea, as it is clear the prosecuting attorney withheld exculpatory evidence.

(*Id.*, Ex. 75).

On January 31, 2011, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the trial court's judgments. (*Id.*, Exs. 78-79). The court reasoned in pertinent part that to the extent petitioner sought in the first three assignments of error to attack the original sentence imposed in 2002 by bootstrapping the claims onto the July 8, 2010 "Nunc Pro Tunc" sentencing entry correcting the post-release control clerical error, the claims were still barred from review under the doctrine of *res judicat*a because they were or could have been raised by petitioner on direct appeal. (*Id.*, Ex. 78, pp. 3-5). The court also overruled the fourth assignment of error because the record demonstrated that petitioner had "argued in one of his suppression motions that his arrest was unlawful when a Clinton County law enforcement officer traveled to a neighboring county to pick" him up, the "trial court addressed the claim in denying the motion to suppress," and petitioner's conviction was upheld on direct appeal. (*See id.*, pp. 5-6).

Petitioner appealed the appellate court's decision to the Ohio Supreme Court. (*Id.*, Exs. 80-81). On May 25, 2011, the Ohio Supreme Court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 82).

**Pending Federal Habeas Petition**

In November 2011, petition filed the instant federal habeas corpus petition.  (Doc. 1).

Petitioner alleges five grounds for relief:

**Ground One:**  Void Sentence.

**Supporting Facts:**  The Ohio Supreme Court in *State v. Simpkins* 117 Ohio St.3rd 420, 884 N.E.2d 568, stated tha[t] if Post-release control was not properly imposed the defendant was to be granted a *de nov[o]* sentencing.  This Petitioner filed a Motion for Resentencing, and was denied by the Clinton County Common Pleas Court.  Petitioner appealed to the Clinton County Court of Appeals, Twelfth Appellate District.  The Appellate Court agreed with Petitioner.  However, the Appellate Court said it was a clerical error and could be corrected *nunc pro tunc*.  Petitioner filed a Certified Conflict Motion.  The Appellate Court agreed that there was a Certified Conflict.  Petitioner filed an Appeal to the Ohio Supreme Court.  The Ohio Supreme Court declined Jurisdiction, and then violated its own rule by refusing to rule on the Certified Conflict.

**Ground Two:**  Void Sentence - The trial court imposed a Five (5) year Mandatory sentence NOT supported by statute - LAW.

**Supporting Facts:**  Petitioner's sentence was changed by a *nunc pro tunc* change, ordered by the Appellate Court[.]  Petitioner filed a new direct appeal.  The Common Pleas Court imposed a five (5) year mandatory prison term.  The trial court stated, "*** there is a presumption, a mandatory prison term of five years here."  Sentences are NOT based on presumptions, sentences are imposed p[u]rsuant to statute.  There is NO statute to support a mandatory sentence for violation of O.R.C. 2907.02(A)(2).  The five year mandatory sentence statute is for violation of O.R.C. 2907.02(A)(1)(a).  The Court errored when it imposed a sentence for the wrong statute. . . .

**Ground Three:**  The Trial Court ERRORED When It Imposed Maximum And Consecutive Sentences.

**Supporting Facts:**  The Trial Court employed a presumption to impose maximum and consecutive sentences, NOT statutes. . . .  *[Blakely] v. Washington* 542 U.S. 296 clearly states first time offenders are to receive minimum concurrent sentences.  The Court used O.R.C. §2929.14(E)(4) to impose consecutive sentences.  That statute was ruled unconstitutional in *State v. Foster*, 109 Ohio St.3d. 1.  Most re[c]ently Ohio House Bill 86, states that O.R.C. §2929.14(E)(4) is to be imposed on *REPEAT VIOLENT OFFENDERS*.

**Ground Four:**  The Trial Court ERRORED When It Imposed a Sentence On An Allied Offen[s]e, And Then Ran That Sentence Consecutive With The Allied Offense.

**Supporting Facts:**  Rape and kidnap[p]ing are allied offenses unless there is "*prolonged restraint*," and/or "**movement**[.]"  There was NO prolonged restraint, and NO movement.

**Ground Five:**  The Trial Court ERRORED When The Court Denied Appellant's Motion To Withdraw His NO CONTEST PLEA, As It Is Clear The Prosecuting Attorney Withheld Exculpatory Evidence.

**Supporting Facts:**  During the hearing to suppress evidence the prosecuting attorney withheld evidence in the form of the Wilmington Police Radio Log. That Radio Log proves the Prosecuting Attorney had State Witnesses commit perjury on the witness stand.

(Doc. 1, pp. 6, 8, 9-10, 11, 12 1/2).

## II.  OPINION

### A.  The Claims Alleged In Grounds Two Through Four And A Portion Of Ground Five Are Successive Within The Meaning Of 28 U.S.C. §2244(b) And, Therefore, Must Be Transferred To The Sixth Circuit For Authorization

Pursuant to 28 U.S.C. § 2244(b)(1), the federal district court must dismiss a claim presented in a second or successive habeas corpus petition that was raised in a prior petition.  In addition, the court must dismiss a claim presented in a second or successive petition, which the petitioner did not include in the prior petition, unless: (1)(a) petitioner shows the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court, that was previously unavailable; or (b) the factual basis for the claim could not have been discovered previously through the exercise of due diligence; **and** (2) the facts would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2244(b)(2).

Before the district court may consider a successive petition, the petitioner must first request and obtain authorization for such consideration from the court of appeals. 28 U.S.C. § 2244(b)(3). The court of appeals may authorize the district court to consider a successive petition only if petitioner makes the *prima facie* showing described above. *Id.*

The subsequent petition must relate to the same conviction or sentence under attack in the prior petition to be "successive" within the meaning of the statute. *See In re Page,* 179 F.3d 1024, 1025 (7th Cir. 1999) (and cases cited therein). The Supreme Court has held that a habeas corpus petition is not successive and, therefore, § 2244(b) does not apply when it is the first application challenging a new judgment, such as a new sentence imposed on resentencing, that occurs between habeas proceedings. *Magwood v. Patterson,* __ U.S. __, 130 S.Ct. 2788, 2796 (2010). In addition, not all subsequent petitions relating to the same conviction or sentence are considered successive. *See Stewart v. Martinez-Villareal,* 523 U.S. 637 (1998). Otherwise, "a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review." *Id.* at 645.

Courts have held that a later petition does not constitute a successive petition within the meaning of the statute where the claim was raised in the first petition but was dismissed as premature, *see id.*; the first petition was dismissed without prejudice for failure to exhaust state court remedies, *see Slack v. McDaniel,* 529 U.S. 473, 485-86 (2000); *Carlson v. Pitcher,* 137 F.3d 416 (6th Cir. 1998); or the first petition was dismissed because petitioner failed to either pay the filing fee or provide proper support for his application for pauper status, *see Stewart,* 523 U.S. at 645 (citing *Marsh v. United States District Court for the Northern District of California,* No. C-94-0581-VRW, 1995 WL 23942 (N.D.Cal. Jan. 9, 1995)). In all of those contexts, the

district court had jurisdiction to consider the subsequent petitions without first obtaining

authorization from the court of appeals, because the prior dispositions were not "on the merits."

*See Slack,* 529 U.S. at 485-86; *Carlson,* 137 F.3d at 419; *Camarano v. Irvin,* 98 F.3d 44, 46-47

(2nd Cir. 1996).

In contrast, when a prior petition is dismissed because the petitioner procedurally

defaulted his claims in state court, the dismissal is considered "on the merits."  In such a case,

the prisoner must obtain authorization from the court of appeals pursuant to § 2244(b)(3) before

filing a subsequent federal habeas application.  *In re Cook,* 215 F.3d 606, 608 (6th Cir. 2000);

*Carter v. United States,* 150 F.3d 202, 205-06 (2nd Cir. 1998).  Similarly, when the prior petition

is dismissed on the ground that it is barred by the statute of limitations, the dismissal is an

adjudication of the merits of the claims, and petitioner must obtain prior authorization from the

court of appeals entitling him to file a subsequent petition for habeas corpus relief.  *See, e.g.,*

*McNabb v. United States,* 576 F.3d 1028, 1030 (9th Cir. 2009); *Murray v. Greiner,* 394 F.3d 78,

81 (2nd Cir. 2005); *Altman v. Benik,* 337 F.3d 764, 766 (7th Cir. 2003); *Staffney v. Booker,* No.

2:09cv14553, 2009 WL 4506425, at *1 (E.D. Mich. Nov. 25, 2009) (transferring the petition to

the Sixth Circuit as a successive petition).[4]

Here, it is clear from the face of the instant petition that petitioner is attacking the same

conviction and sentence that he previously challenged (1) in a federal habeas petition filed in

December 2003 with this Court, which was denied on the merits in a decision that petitioner

unsuccessfully sought to appeal to the Sixth Circuit and, thereafter, to the United States Supreme

---

[4]*Contrast Gonzalez v. Crosby,* 545 U.S. 524, 535-36 (2005) (a motion for relief from judgment under Fed.
R. Civ. P. 60(b), which "challenges only the District Court's previous ruling on the AEDPA statute of limitations, ...
is not the equivalent of a successive habeas petition").

Court; and (2) in a subsequent application, filed with and denied by the Sixth Circuit in 2008, requesting authorization to file a second federal habeas petition. (*See* Doc. 1; Doc. 4, Exs. 19-27, 49). Although the trial court subsequently entered a "Nunc Pro Tunc" sentencing entry in accordance with a remand order by the Ohio Court of Appeals to correct a clerical error in the original sentencing entry regarding post-release control, the new entry did not change or otherwise constitute a "new judgment" within the meaning of *Magwood* with respect to petitioner's conviction or sentences imposed in 2002 for the underlying criminal offenses. *Cf. In re Martin,* 398 F. App'x 326, 327 (10th Cir. 2010) (distinguishing *Magwood* in holding that a habeas petition filed after an amended judgment correcting a "clerical error" was entered constituted a successive petition under § 2244(b)); *see also In re Lampton,* 667 F.3d 585, 587-89 (5th Cir. 2012); *Hawkins v. United States,* No. 89-CR-80335, 2011 WL 2533658, at *1-2 (E.D. Mich. June 27, 2011).

Here, three of petitioner's grounds for relief in the instant case are clearly successive within the meaning of 28 U.S.C. § 2244(b)(1) because petitioner raised them in the prior federal habeas proceedings. Specifically, petitioner asserted the claim alleged in Ground Two as his fifth ground for relief in the habeas petition filed in 2003. He also raised the claim alleged in Ground Three as his fourth ground for relief in the prior habeas petition, as well as in his application to the Sixth Circuit to the extent he sought to add a *Blakely* claim based on the Ohio Supreme Court's 2006 *Foster* decision and United States Supreme Court's 2007 *Cunningham* decision. Finally, the claim alleged in Ground Four was raised by petitioner as his seventh ground for relief in the earlier-filed habeas petition. (*See* Doc. 1, pp. 8-11; Doc. 4, Exs. 19-21, 49). The claims were adjudicated "on the merits" in the prior habeas proceedings to the extent

that (1) the District Court in the first action determined that the claims alleged in Grounds Two and Three were procedurally defaulted and barred from review and that the claim alleged in Ground Four was meritless; and (2) the Sixth Circuit addressed the merits of petitioner's *Blakely* claim based on *Foster* and *Cunningham* in denying petitioner's application for authorization to file a second petition. (*See* Doc. 4, Ex. 20, pp. 9-12, 22-28 & Exs. 21, 49).

Plaintiff has asserted a claim in Ground One challenging the validity of the "Nunc Pro Tunc" sentencing entry filed on July 8, 2010, which could not have been raised in the prior habeas proceedings. Moreover, in Ground Five, petitioner challenges the denial of his motion for withdrawal of his no contest plea on July 26, 2010, which also occurred after the prior habeas proceedings had concluded. Therefore, those claims are not successive. *Cf. Magwood*, 130 S.Ct. at 2796.

However, to the extent that petitioner seeks to attack the constitutionality of his no contest plea in Ground Five based on the alleged withholding of exculpatory evidence, petitioner's claim is successive within the meaning of 28 U.S.C. § 2244(b)(2) because petitioner has not shown that such claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court, that was previously unavailable, or that the factual basis for the claim could not have been discovered previously through the exercise of due diligence. Petitioner has not provided any explanation for his over eight-year delay in bringing to the courts' attention the allegedly exculpatory Wilmington Police Radio Log of June 12, 2001, claimed to have been withheld by the prosecuting attorney.

In any event, even assuming that the log could not have been discovered years earlier through the exercise of due diligence, petitioner has not shown that the information contained in

the log establishes by clear and convincing evidence that, but for the alleged constitutional error, no reasonable fact-finder would have found him guilty of the underlying offenses, or even more specifically that the Wilmington police officer who picked petitioner up in Highland County lacked probable cause to arrest and search petitioner or lied at the suppression hearings. In pleadings filed in the state-court proceedings on his motion to withdraw his no contest plea, petitioner claimed that the log demonstrates that the police officer who was sent to retrieve him from Highland County was not informed by the Wilmington police department in advance that the rape victim had identified petitioner as her attacker or of the details of the BOLO. (*See* Doc. 4, Ex. 70 & Ex. 75, pp. 8-15). Contrary to petitioner's contention, the log only constituted a record of the *dispatcher's* conversations and actions on June 12, 2001. The log, therefore, would not have included a record of conversations, which the police officer testified at the suppressions hearings he had with other officials in the police department, informing the officer of identifying circumstances that established probable cause.

Therefore, in sum, the undersigned finds that the claims alleged in Grounds Two through Four and the portion of the claim alleged in Ground Five challenging the constitutionality of his no contest plea are successive within the meaning of 28 U.S.C. § 2244(b). This Court lacks jurisdiction to consider those claims without petitioner's first obtaining authorization from the Sixth Circuit.

When a prisoner has filed a successive petition for habeas corpus relief in the district court without first obtaining authorization from the Court of Appeals, the district court in the interest of justice pursuant to 28 U.S.C. § 1631 is required to transfer the case to the Sixth Circuit for consideration as required under § 2244(b)(3). *See In re Sims,* 111 F.3d 45, 47 (6th

Cir. 1997) (citing *Liriano v. United States,* 95 F.3d 119, 122 (2nd Cir. 1996)).  This is a type of "mixed petition" containing both claims that are clearly successive and claims that do not appear to be successive within the meaning of 28 U.S.C. § 2244(b).  *Cf. McCall v. Voorhies*, No. 2:08cv117, 2009 WL 249064, at *7 (S.D. Ohio Feb. 2, 2009) (Kemp, M.J.), *adopted*, 2009 WL 415247 (S.D. Ohio Feb. 18, 2009) (Frost, J.).  In *McCall*, the court transferred the successive claims to the Sixth Circuit and dismissed the non-successive claims "on the merits" based on the alternative ground that the claims were procedurally defaulted.  *See id.* at *7-9.  Similarly here, the undersigned concludes that respondent's motion to dismiss/transfer (Doc. 4) should be **GRANTED**, but only to the extent that the successive claims alleged in Grounds Two through Four and the portion of Ground Five challenging the constitutionality of petitioner's no contest plea should be transferred to the Sixth Circuit for review and determination whether the district court should be granted authorization to entertain them.  The undersigned will proceed to address the merits of petitioner's remaining claims.

## B.  The Remaining Claims Alleged In Grounds One and Ground Five Should Be Dismissed Because They Do Not Constitute Cognizable Grounds For Federal Habeas Relief

In Ground One of the petition, petitioner claims that the July 8, 2010 "Nunc Pro Tunc" sentencing entry to correct a clerical error in the original sentencing entry is void because a *de novo* sentencing hearing should have been held.  (Doc. 1, p. 6).  In the non-successive portion of Ground Five, petitioner claims that the trial court erred in denying his motion to withdraw his no contest plea on July 26, 2010.  (*Id.*, p. 12 1/2).

In this federal habeas case, the court has jurisdiction to review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States.  *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984);

*see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

In Ground One, petitioner does not allege an issue of constitutional dimension. Rather, his allegations are based solely on state-law standards governing remands for the correction of clerical errors in sentencing entries and Ohio Supreme Court review of cases in which a certification of conflict has issued. *Cf. Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (holding that the petitioner's claim of a violation of his due process rights during sentencing failed to state a claim for federal habeas relief to the extent the claim was based on an alleged violation of state law); *Coleman v. Curtin,* 425 F. App'x 483, 484-85 (6th Cir.) (holding the claim challenging a sentence calculated under state law was "not cognizable" in the federal habeas proceeding), *cert. denied*, 132 S.Ct. 848 (2011); *Galloway v. Howes*, 77 F. App'x 304, 305 (6th Cir. 2003) (holding that petitioner's contention that his sentence violated state law did not give rise to a "cognizable claim for federal habeas corpus relief").

Moreover, with respect to petitioner's claim challenging the trial court's decision to deny his post-sentence motion to withdraw his no contest plea, it is well-settled that a state defendant has no federal constitutional right, or absolute right under state law, to withdraw a guilty or no contest plea. *See, e.g., Dickey v. Warden, Lebanon Corr. Inst.,* No. 1:08cv819, 2010 WL 92510, at *1, *8 (S.D. Ohio Jan. 6, 2010) (Beckwith, J.; Black, M.J.) (and numerous cases cited therein); *see also Cline v. Kelly,* No. 1:09cv859, 2010 WL 1006529, at *5 & n.7 (N.D. Ohio Mar. 16, 2010) (citing *United States v. Woods,* 554 F.3d 611, 613 (6th Cir. 2009); *Xie v. Edwards,* No. 93-4385, 1994 WL 462143, at *2 (6th Cir. Aug. 25, 1994)). Instead, "the decision whether to permit a defendant to withdraw a guilty plea is committed to the trial court's discretion, which

generally is not a basis for federal habeas relief." *Dickey, supra,* 2010 WL 92510, at *8 (citing *United States ex rel. Scott v. Mancusi,* 429 F.2d 104, 109-10 (2nd Cir. 1970)); *cf. Cline, supra,* 2010 WL 1006529, at *5 (finding that the magistrate judge had "correctly concluded" that "whether a state court grants a motion to withdraw a guilty plea is a matter of state law not cognizable on federal habeas review").

      *Dickey* is factually analogous to the case-at-hand. In that case, the petitioner filed a motion to withdraw his guilty plea over two years after he entered the plea. The *Dickey* court held that the petitioner was "unable to prevail on any claim that the trial court's denial of his May 2006 motion to withdraw his January 2004 guilty plea, of itself, amounted to a violation of the federal Constitution." *Dickey, supra*, 2010 WL 92510, at *8. In so ruling, the court relied on a Sixth Circuit decision, holding "that the district court erred in granting habeas corpus relief to a petitioner who claimed that the trial court's abuse of discretion in refusing to permit him to withdraw his jury trial waiver was, of itself, a violation of the Sixth Amendment." *Id.* (citing *Sinistaj v. Burt,* 66 F.3d 804, 807-08 (6th Cir. 1995)). The *Dickey* court concluded that the following reasoning, quoted from *Sinistaj,* 66 F.3d at 808 (emphasis in original), also applied to the petitioner's claim challenging the denial of his post-sentence motion to withdraw his guilty plea:

> It is possible, of course, at least in theory, that a state court's refusal to permit a defendant to withdraw a previously filed jury trial waiver could amount to an unconstitutional denial of the defendant's Sixth Amendment right to a jury trial. But we can conceive of no situation in which a federal judicial determination on *habeas* collateral review that a state court, as a matter of general law, abused its discretion in denying the withdrawal motion is *therefore* a violation of the federal Constitution.

Similarly here, the undersigned is persuaded that to the extent that petitioner challenges the trial

court's denial of his July 23, 2010 motion to withdraw his January 17, 2002 no contest plea, his claim is not subject to review in this federal habeas proceeding.

Accordingly, in sum, the undersigned concludes that petitioner's remaining non-successive claims alleged in Grounds One and Five of the petition should be dismissed with prejudice because they raise issues of state-law only, which this Court lacks jurisdiction to consider on federal habeas review.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss/transfer (Doc. 4) be **GRANTED** to the extent that petitioner's successive claims alleged in Grounds Two through Four of the petition and in the portion of Ground Five challenging the constitutionality of petitioner's no contest plea should be **TRANSFERRED** to the United States Court of Appeals for the Sixth Circuit for review and determination whether the district court should be granted authorization to entertain any of those claims. Petitioner's remaining non-successive claims alleged in Grounds One and Five of the petition challenging the trial court's July 8, 2010 "Nunc Pro Tunc" sentencing entry and July 26, 2010 entry denying petitioner's motion to withdraw his January 17, 2002 no contest plea should be **DISMISSED** with prejudice.

2. A certificate of appealability should not issue with respect to the non-successive claims alleged in Grounds One and Five, which have been adjudicated on the merits herein, because they do not rise to the level of a "viable claim of the denial of a constitutional right" and are not "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and, therefore, should **GRANT** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
### WESTERN  DIVISION

CHARLES WILLIAM CARTER,                    Case No. 1:11-cv-800
     Petitioner

     vs                                        Spiegel, J.
                                      Bowman, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
     Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc